# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DANIEL AGUILAR,**
        Petitioner,

  v.                                                   Case No. 05C1269

**PHIL KINGSTON,**
        Respondent.

## DECISION AND ORDER

Petitioner Daniel Aguilar, a Wisconsin state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a loss of good-time credits, resulting in a 180-day extension of his mandatory release date, pursuant to a Wisconsin Department of Corrections (DOC) disciplinary decision.

## I. BACKGROUND

On July 23, 2003, petitioner was involved in a fight while housed at the North Fork Correctional Facility (NFCF) in Oklahoma. The next day, petitioner was transferred from NFCF to the Stanley Correctional Institution (SCI) in Wisconsin. Subsequently, NFCF sent an "incident report" about the fight to SCI. SCI staff searched petitioner's cell and found two letters that supported the facts as described in the NFCF report. SCI produced its own conduct report for the incident, stating that petitioner had attacked another prisoner with a padlock wrapped in a white cloth, charging petitioner with battery and weapon possession, and listing the incident report and letters as evidence. Petitioner demanded a hearing, where he argued that SCI lacked "jurisdiction" to punish him under DOC rules because the fight had taken place at NFCF but did not contest the factual basis for the

charges. At the close of the hearing, petitioner was found guilty of the charges. That decision was affirmed by an administrative appellate body, and by a Wisconsin circuit court and the Wisconsin Court of Appeals. Petitioner filed a petition for review with the Wisconsin Supreme Court, which was denied.

Petitioner claims that respondent violated the Fourteenth Amendment's equal protection clause by disciplining him under DOC rules rather than NFCF rules. Petitioner also claims that respondent violated the Fourteenth Amendment's due process clause by: (1) providing him with insufficient notice of the disciplinary charges against him; (2) refusing to provide him with documentary evidence and requested witnesses; (3) requiring that petitioner request witnesses for his hearing before he could meet with his advocate and failing to provide him with a competent advocate; (4) finding him guilty of the disciplinary charges on insufficient evidence;[1] and (5) adding evidence supporting the charges to the record on administrative appeal to mask the insufficiency of the evidence presented at the hearing.[2] Petitioner demands reversal of the 180 day extension of his mandatory release date.

---

[1] Petitioner additionally argues that the written disciplinary decision was inadequate. However, this argument simply restates his sufficiency of the evidence argument.

[2] To the extent that petitioner also argues that Wisconsin law required DOC to rely on NFCF's rules rather than its own, such claim is not cognizable in a habeas petition. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (holding that federal habeas relief may not be granted based on errors of state law). Wisconsin's system for disciplining its prisoners who commit infractions while housed at out-of-state private prisons is a matter of state law, as long as it comports with due process.

2

## II. PROCEDURAL DEFAULT

I must first determine whether petitioner procedurally defaulted on his claims. Under AEDPA, "[a]n applicant [for a writ of habeas corpus] shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). This exhaustion doctrine "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim to each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004).

To "fairly present" a claim, a brief must "present both the operative facts and the legal principles that control each claim." Wilson v. Briley, 243 F.3d 325, 327-28 (7th Cir. 2001). The Seventh Circuit has enumerated four factors to be considered by a habeas court in determining whether a petitioner presented to each appropriate state court the federal constitutional principles controlling his claims:

> (1) whether the petitioner relied on federal cases that engage in constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.

Id.

3

Respondent first argues that this petition must be dismissed because petitioner failed to challenge the loss of his good-time credits in state court. Petitioner appealed the DOC's decision, which resulted in 360 days in program segregation, but he did not appeal the subsequent parole board decision to extend his mandatory release date by 180 days. However, any time a Wisconsin state prisoner is disciplined with placement in segregation status, his mandatory release date is automatically extended by a number of days equal to 50% of the days spent in segregation status. Wis. Stat. § 302.11(2)(b). As such, petitioner's appeal of the DOC decision effectively acted as an appeal of the parole board's non-discretionary extension of petitioner's mandatory release date.

Respondent also argues that this petition must be dismissed because petitioner failed to raise his equal protection claim in state court. However, petitioner's petition for a writ of certiorari to the state circuit court states that the DOC's application of DOC disciplinary rules to petitioner subjected him to "unequal treatment" compared to other inmates at NFCF who commit the same offense. (Answer Ex. 3 at 3.) It describes how the DOC's treatment of him differs from its treatment of others. I find that petitioner's use of the phrase "unequal treatment" and subsequent description was sufficient to call to mind the constitution's equal protection clause. In his appeal of the circuit court's decision, petitioner clearly states his equal protection claim as one arising from the Fourteenth Amendment.

As such, I will proceed to the merits of petitioner's claims.

## III.  MERITS

### A.  AEDPA Standard

AEDPA permits a district court to grant a petition for a writ of habeas corpus only when the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. 362, 413 (2000). To constitute an "unreasonable application" of clearly established federal law, a state court decision must be "more than incorrect or erroneous." Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (citing Williams, 529 U.S. at 410, 412). Under this standard, "if the state court's decision is 'at least minimally consistent with the facts and circumstances of the case,' the federal court is powerless to grant relief." Hammer v. Karlen, 342 F.3d 807, 810 (7th Cir. 2003) (quoting Hennon v. Cooper, 109 F.3d 330, 335 (7th Cir. 1997)).

### B.  Equal Protection Claim

To comply with equal protection, governmental entities are generally required to treat all similarly-situated persons in a similar manner. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). In equal protection analysis, the level of scrutiny the court

5

applies to a government action varies depending upon whether the plaintiff is a member of a suspect class or whether a fundamental right is at stake.  Id.  However, "class of one" equal protection claims arise without regard to protected-class status where the plaintiff "has been intentionally treated differently from others similarly situated and . . . there is no rational basis for the difference in treatment."  Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  A prisoner's "allegation that one other prisoner received better treatment is not enough to show an equal protection violation," particularly if a habeas petitioner is unable to show how the other prisoner's circumstances were similar to his.  Zamor v. Martinez, No. 06C567, 2006 U.S. Dist. LEXIS 80089, at *13 (W.D. Wis. Oct. 30, 2006).

Petitioner claims that the application of DOC rules to him violated his right to equal protection because other NFCF inmates who engage in the same conduct but are not transferred, are subject to more lenient disciplinary sanctions.  However, petitioner fails to allege, much less prove, that Wisconsin treated him, alone or as a member of a class, differently than others similarly situated, i.e. others transferred from NFCF (or any other out-of-state prison) to a Wisconsin state prison after being involved in an incident subject to discipline but before being disciplined for that incident.  To the extent that petitioner attempts to raise a "class of one" claim (and to the extent that it compares Wisconsin's treatment of petitioner to Wisconsin's treatment of other Wisconsin prisoners remaining housed at NFCF[3]), it fails because Wisconsin had a rational basis for treating him differently – his transfer prior to being disciplined for fighting.  Petitioner does not claim that

---

[3]Obviously, petitioner cannot bring an equal protection claim against Wisconsin comparing Wisconsin's treatment of him to another authority's treatment of a prisoner not in Wisconsin's legal custody.

6

Wisconsin intentionally singled him out for transfer in order to punish him more harshly; rather, given evidence in the record that NFCF was permanently closing its doors, it appears that Wisconsin's decision to transfer petitioner was a run-of-the-mill administrative decision. As such, his equal protection claim fails.

**C. Due Process Claims**

In the prison disciplinary context, the process due a prisoner is quite limited. A prisoner need only receive written notice of the charges, an opportunity to present evidence to an impartial decision-maker, and a written explanation for the discipline that is supported by "some evidence." Piggie v. Cotton, 344 F.3d 660, 662 (7th Cir. 2003).

Petitioner's first claim is that his notice was insufficient. Written notice must list the specific offense and the underlying facts, and must be given at least 24 hours before the matter is adjudicated. Wolff v. McDonnell, 418 U.S. 539, 564 (1974). The evidence cited in such notice may include hearsay statements. See Jackson v. Carlson, 707 F.2d 943, 948 (7th Cir. 1983) (finding hearsay statements sufficient to support disciplinary charges). In the present case, SCI's conduct report enumerated the charges against petitioner and the facts underlying the charges and was issued to petitioner more than a week before petitioner's hearing. Thus, it is clear that the state court did not err in finding that the notice given to petitioner was sufficient. See Wolff, 418 U.S. at 564. Petitioner is troubled by the fact that the report relies heavily on NFCF's incident report. But while this may implicate the sufficiency of the evidence against petitioner, it does not undermine the notice itself. Petitioner also argues that he did not get notice soon enough after the underlying incident to marshal a defense. Apparently, NFCF permanently closed its doors soon after petitioner received the notice, preventing petitioner from procuring a statement from a guard.

7

However, petitioner received notice on August 6, 2006, eleven days after the underlying incident, and five days before NFCF closed. I know of no case holding that due process requires a conduct report to be written immediately after an incident, and the state court was correct in finding that this brief lapse of time did not offend due process.[4]

Petitioner's next claim is that his right to due process was violated when his pre-hearing requests for documentary evidence and witnesses were denied. Due process requires that a prisoner be allowed to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals. Wolff, 418 U.S. at 566. Due process does not require disclosure of evidence unless such evidence is material and exculpatory, and "there is no right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." Cotton, 344 F.3d at 677-78. While petitioner was denied a copy of the NFCF incident report and the name of the author of that report prior to his hearing, the state court was correct in finding that such denial did not offend due process. The SCI conduct report contained all of the material information in the NFCF report. Further, petitioner does not argue that any other information in the NFCF report or the name of the report's author relates to his culpability, and thus has failed to allege, much less prove, that such information is material or exculpatory.

Petitioner also requested five witnesses – two NFCF inmates and three NFCF officials. The inmate witnesses did make statements through NFCF officers. Petitioner argues that this was insufficient, as SCI should have demanded signed statements.

---

[4]Indeed, given the due process requirement that prison officials gather "some evidence" before a disciplinary hearing, Cotton, 344 F.3d at 662, giving notice too soon after an incident could defeat the charges.

8

However, disciplinary proceedings need not follow the Federal Rules of Evidence. See Jackson, 707 F.2d at 948. And even if due process requires the production of signed statements, which is not clear, the state court reasonably found that any error was harmless because petitioner does not dispute the content of the transcribed statements and thus the hearing officer "was not called upon to make credibility determinations to resolve a factual dispute." State ex rel. Aguilar v. Frank, No. 2004AP2865, 2005 Wisc. App. LEXIS 657, at *8 (Wis. Ct. App. July 28, 2005); see also Cotton, 344 F.3d at 678 (stating that due process only requires the disclosure of material or exculpatory evidence). Further, the state court correctly found that the testimony desired from the NFCF officials was irrelevant. See Cotton, 344 F.3d at 677. Petitioner wanted to ask all of the officials about NFCF's disciplinary policy. He also wanted to ask one official questions such as whether petitioner was generally a troublemaker. He did not intend to inquire of any official whether he committed the charged offenses.

Petitioner next claims that he was deprived of a due process right to an effective advocate. A prisoner at a disciplinary hearing has no right to counsel. See Baxter v. Palmigiano, 425 U.S. 308, 315 (1976); Wallace v. Tilley, 41 F.3d 296, 301 (7th Cir. 1994). If a prisoner is illiterate or if his case is unusually complex, he may "seek the aid of a fellow inmate, or if that is forbidden, . . . [receive] help from the staff or from a sufficiently competent inmate designated by the staff." Wolff, 418 U.S. at 570. In this case, petitioner was arguably handicapped in marshaling his defense because he was confined to segregation prior to his hearing. See Eng v. Coughlin, 858 F.2d 889, 898 (2d Cir. 1988) (stating that where a prisoner is in segregation status, he should be assigned an advocate to perform investigatory tasks); Aikens v. Lash, 514 F.2d 55, 59 (7th Cir. 1975) (stating that

9

segregation status could work a hardship on a prisoner comparable to illiteracy), vacated on other grounds, 425 U.S. 947 (1976). However, the state court was correct in concluding that petitioner received assistance to which he was constitutionally entitled. Petitioner is primarily concerned that his advocate was unable or unwilling to help him challenge SCI's jurisdiction to discipline him. But even an illiterate prisoner is not entitled to legal counsel, but only some assistance with factual investigation. Petitioner has never alleged that there was any relevant factual investigation to be done in his case.

Turning to petitioner's claim of insufficient evidence, there must only be a "modicum of evidence" that a prisoner has violated a rule to sustain a disciplinary finding. Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985). Hill's standard is "less exacting than the preponderance of the evidence standard, requiring only that the decision not be arbitrary or without support in the record." McPherson v. McBride, 188 F.3d 784, 786 (7th Cir. 1999). It can be met by a disciplinary report alone. Id. In the present case, the state court correctly found that the evidence was more than sufficient to support the charges. The NFCF incident report states that petitioner assaulted another inmate with a cloth-covered padlock in a recreation area in view of other inmates and staff, and was written by Shift Supervisor Moody, who states that he personally interviewed petitioner and the other inmate after the fight. Petitioner's letters show the reliability of that report. They confirm that petitioner was involved in a bloody fight just before leaving NFCF and that he was the primary aggressor. Further, they state that the other inmate involved in the fight told "Moody" "the whole scoop" about the fight, (Answer Ex. 2 at 19, 21).

Finally, petitioner's claim that his right to due process was violated when the DOC's appellate body added a photograph to the record on appeal to support the charges against him is meritless, as there was sufficient evidence at his hearing without the photograph.

### IV.  CONCLUSION

Therefore,

**IT IS ORDERED** that Daniel Aguilar's petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 8 day of December, 2006.

/s_____
LYNN ADELMAN
District Judge